Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 5863 | **DATE** | 4/19/2004 |
| **CASE TITLE** | Kathleen F. Egebergh vs. Village of Mount Prospect, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Rule 59(a) motion for new trial (193-1) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | APR 2 0 2004 | |
| | Notified counsel by telephone. | | date docketed | 203 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | (docketing deputy initials) | |
| | Copy to judge/magistrate judge. | | | |
| CW | courtroom deputy's initials | 2004 APR 19 PM 2: | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

KATHLEEN F. EGEBERGH, individually )
and as Special Administratrix of )
the Estate of EDWARD J. )
FITZGIBBONS, Deceased, )
)
      Plaintiff, )
)
v. )   No. 96 C 5863
)   Paul E. Plunkett, Senior Judge
VILLAGE OF MOUNT PROSPECT, )
COMMANDER DAVID NICHOLSON, )
individually and as agent of VILLAGE OF )
MOUNT PROSPECT, OFFICER JOSEPH )
BURDI, individually and as agent of )
VILLAGE OF MOUNT PROSPECT, )
)
      Defendants. )

DOCKETED
APR 2 0 2004

## MEMORANDUM OPINION AND ORDER

On October 17, 2003, the Court entered judgment, upon a jury verdict, against Kathleen Egebergh, special administratrix of the estate of Edward Fitzgibbons, plaintiff, and in favor of defendants, Commander David Nicholson and Officer Joseph Burdi. Currently before us is Egebergh's motion for a new trial pursuant to Federal Rule of Civil Procedure ("Rule") 59(a). For the following reasons, the motion is denied.

### The Legal Standard

Rule 59(a) allows the Court to grant a new trial if the "verdict is against the weight of the evidence, the damages are excessive, or if for other reasons the trial was not fair to the moving

party." *Briggs v. Marshall*, 93 F.3d 355, 360 (7th Cir. 1996) (internal quotation and citation omitted). With respect to errors of law, a new trial will be granted only if refusal to do is "inconsistent with substantial justice." Fed. R. Civ. P. 61. Errors that are not prejudicial are not grounds for relief under Rule 59(a). *Bustamante v. Thedford*, 1995 WL 480829 (N.D. Ill. Aug. 11, 1995).

### Discussion

Egebergh has raised six grounds for a new trial; we discuss each in turn.

A.     Admissibility of Evidence of Past Drug Use

Egebergh argues that she was prejudiced by defendants' reference to Fitzgibbons's past drug use. She says that repeated references to past drug use portrayed Fitzgibbons as a drug user and diverted the jury's attention from the real issue in the case. In addition, she asserts that evidence of past drug use had no probative value.

Evidence of Fitzgibbons's past drug use was relevant to the damages portion of the trial, specifically the value of the loss of Fitzgibbons's life to Fitzgibbons himself.[1] "Damages in a section 1983 action . . . must be based on damages actually suffered." *Bemben v. Hunt*, 1995 WL 27223, at *3 (N.D. Ill. Jan. 23, 1995). In order for the jury to assess the damages suffered by Fitzgibbons, they must be allowed to consider all evidence relevant to that inquiry. This includes evidence about Fitzgibbons's health, habits and the manner in which he led his life. *See* Fed. R. Evid. 402. We considered the possibility of unfair prejudice resulting from the introduction of Fitzgibbons's past

---

[1] Egebergh mistakenly assumes that because she was not able to recover personally for loss of society, evidence of Fitzgibbons's habits touching on the value of his life was irrelevant. This is not the case. In a section 1983 action resulting in death, the victim's estate may recover for loss of life, i.e., Fitzgibbons's loss of the enjoyment of his life. *See Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1104-05 (7th Cir. 1990).

drug use, *see Fletcher v. Conway*, 1991 U.S. Dist. Lexis 2041 (N.D. Ill. Feb. 21, 1991) (evidence of drug use can be "highly prejudicial") (citing *United States v. Cameron*, 814 F.2d 403, 504 (7th Cir. 1987)), but in this case, we found the evidence was admissible as it was probative of the value to Fitzgibbons of his own life. *See United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987) (evidence of witness's illegal drug use admissible for limited purpose to show witness's inability to recollect specific facts where memory of witness at issue).

The portions of the trial transcript provided by Egebergh do not suggest that "steady reference" to Fitzgibbons's past drug use was made. His past drug use was mentioned during defendants' cross examination of Egebergh and any inappropriate or inaccurate mention of his past drug use was quickly addressed and cured by the Court. *See Wilson v. Groaning*, 25 F.3d 581, 587 (7th Cir. 1994) (court can cure any prejudice that may come from inappropriate question or testimony). Fitzgibbons's past drug use was also discussed by defendants' expert, Dr. Mengel, in the context of whether Fitzgibbons was able to manage his diabetes. Egebergh's attorney had an opportunity, which he took advantage of, to cross examine Mengel and place the significance of Fitzgibbons's past drug use into the larger context of Fitzgibbons's life as a whole. References to Fitzgibbons's past drug use were limited and had probative value.

Moreover, Egebergh has not shown that she was prejudiced by the introduction of this evidence. The jury, having found for defendants on the issue of liability, did not reach the issue of damages and therefore had no occasion to consider how past drug use would impact the value of Fitzgibbons's life.

B.  Fitzgibbons's Serious Medical Need

Egebergh asserts that her case was prejudiced by defendants' introduction of evidence that Fitzgibbons did not have a serious medical need. She argues that defendants previously stated in an appellate brief that Fitzgibbons had a serious medical need, thus creating a judicial admission and withdrawing the fact from contention.[2] According to Egebergh, defendants should have been bound to that position during the trial and the jury instructed that the question of serious medical need was not an issue.

"Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Keller v. United States*, 58 F.3d 1194, 1199 n.8 (7th Cir. 1995). To qualify as a judicial admission, the statement must be "deliberate, clear, and unambiguous" and must constitute an intentional waiver. *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 682 (7th Cir. 2002) (Rovner, J., concurring). A court has discretion to consider statements of facts to be judicial admissions. *Mopex, Inc. v. Barclays Global Investors, N.A.*, 2003 WL 880996, at *2 (N.D. Ill. March 5, 2003). Moreover, a court can relieve a party of its judicial admission. *McCaskill*, 298 F.3d at 682.

The issue of whether Fitzgibbons had a serious medical need was a contested one from the beginning of the case. Whether the statement in the appellate brief constituted a judicial admission was argued by the parties before trial, and we found then that, while the statement was perhaps improvidently made, there was no evidence of defendants' intention to permanently waive their position on the issue. The issue of Fitzgibbons's serious medical need was not relevant to the appeal

---

[2] The brief was filed with the U.S. Court of Appeals for the Seventh Circuit in connection with an interlocutory appeal on the issue of qualified immunity.

before the Seventh Circuit, and so defendants conceded the point for purposes of the appeal. In any event, we exercised our discretion with respect to defendants' statement and declined to give it conclusive effect as to whether Fitzgibbons had a serious medical need. *See Mopex, Inc.,* 2003 WL 880996, at *2 (citing Seventh Circuit case law). Egebergh was not prejudiced by the introduction of defendants' evidence on the serious medical need issue. She had the burden of proving the elements of her case, and our rejection of her judicial admission argument did not alter this burden.

C. Dennis Waller's Testimony

Egebergh challenges our decision to limit the testimony of Dennis Waller. She claims that the limits on Waller's testimony left the jury with the impression that defendants did not violate police policies and procedures when dealing with Fitzgibbons and that this was prejudicial.

It is simply not true, however, that the jury was without information regarding whether defendants Nicholson and Burdi followed policies and procedures. Waller testified specifically about certain of defendants' actions and whether they were consistent with proper police procedure. Officers from the Mount Prospect Police Department testified about the police department's policies and guidelines and whether defendants actions violated them. The defendants themselves testified about their understanding of the police department's guidelines.

The Court excluded testimony that was redundant under Federal Rule of Evidence ("Evidence Rule") 403. *See United States v. Messino,* 181 F.3d 826, 829-30 (7th Cir. 1999) (discussing discretion of court to exclude evidence under certain circumstances). Egebergh wanted Waller to testify that defendants' failure to transfer Fitzgibbons with his diabetes medication, and

-5-

other actions, violated CALEA standards.[3] Waller's conclusion would have been a strong suggestion that the violation of these standards constituted deliberate indifference. Whether defendants demonstrated deliberate indifference, however, was a question for the jury alone. Waller still presented testimony regarding proper police procedure; we only excluded his testimony comparing conduct with known standards because it was cumulative and may have confused the jury. We properly exercised our discretion under Evidence Rule 403 with respect to Waller's testimony and Egebergh suffered no prejudice as a result.

D.  Admissibility of Richard Muller's Memorandum

Egebergh offered into evidence a memorandum prepared on July 23, 1996, by Mount Prospect police officer Richard Muller. In his memorandum, Muller said that he overheard a conversation between defendants Nicholson and Burdi where defendants discussed whether Fitzgibbons needed his medication prior to the bond hearing on the morning of July 22, 1996. Egebergh offered this memorandum to expose Nicholson's deliberation about whether Fitzgibbons needed his medication.

We determined that the memorandum was prepared in anticipation of litigation and thus excluded it. Egebergh argues now that the memorandum should have been admitted under Evidence Rule 803(6) because, as police departments conduct investigations on a routine basis and document everything, the memorandum is a record of regularly conducted activity. She says there is no evidence that calls into question Muller's motivations in preparing the memorandum and that

---

[3] CALEA is the Commission on Accreditation for Law Enforcement Agencies.

circumstances surrounding its production do not call into question the memorandum's trustworthiness. Egebergh claims she was prejudiced by the failure to present this piece of evidence.

Our position on this matter has not changed. "Records prepared and kept in the ordinary course of business are presumed reliable for two general sorts of reasons" -- first, when businesses rely on the records to conduct their own affairs, employees who prepare the records are highly motivated to be accurate. *United States v. Blackburn*, 992 F.2d 666, 670 (7th Cir. 1993). Second, the records are deemed reliable because of the routine and habitual nature of their creation. *Id.* However, when a document is created for purposes outside of usual business operations, such as in anticipation of litigation, these justifications for admissibility no longer hold true. *Id.* We find that to be the case here. Although defendant Nicholson stated that the department documents "the heck out of everything", Deputy Chief Daley's deposition testimony, along with the memorandum's content (focusing on an overheard conversation between Nicholson and Burdi), suggest that the memorandum was drafted in anticipation of litigation. (Daley Dep. at 698: "I just felt that in today's times there would be further inquiry.") Accordingly, the memorandum is inadmissible. *See Blackburn*, 992 F.2d at 670 (citing cases in support of "well-established rule that documents made in anticipation of litigation are inadmissible under the business records exception").

Furthermore, Egebergh was not prejudiced by her inability to introduce the memorandum into evidence. Nicholson himself testified about his own decision-making process with respect to Fitzgibbons's need for medication that morning. Much of his thought-process was vocalized to Burdi. Egebergh did not need Muller's memorandum to show Nicholson's deliberation.

E.  Testimony Regarding I-Bond

Egebergh asserts that we should have allowed her to examine Nicholson on his decision not to I-bond Fitzgibbons. She claims that Nicholson was told by fellow officer Rzpecki that Fitzgibbons could have been given an I-bond because of his medical condition. Failure to question

Nicholson on this issue, says Egebergh, was prejudicial because it deprived her of the opportunity to demonstrate Nicholson's deliberate indifference with respect to Fitzgibbons's need for insulin.

In ruling on defendants' motion *in limine* on this issue, we said that there would be no references to Nicholson's ability, or lack thereof, to I-bond Fitzgibbons. Egebergh did not offer at that time any evidence to counter defendants' assertion that an I-bond was not possible. During trial, Egebergh's attorney elicited from Rzpecki a reference to the I-bond procedure and testimony that Nicholson discounted the possibility of an I-bond. In addition, Nicholson testified that he thought Fitzgibbons was going to get an I-bond from Rolling Meadows. Despite our pre-trial decision, Egebergh's attorney introduced the I-bond issue through Rzpecki's testimony and Nicholson's testimony.

Moreover, Egebergh has not demonstrated that she made an offer of proof with respect to testimony about Nicholson's ability to I-bond Fitzgibbons. *See Young v. Rabideau*, 821 F.2d 373, 376 (7th Cir. 1987) (discussing Evidence Rule 103(a) and requirement of offer of proof). Egebergh has not demonstrated that substantial rights were prejudiced by the exclusion of the testimony.

F.  Jury Instructions

Egebergh argues that the Court improperly instructed the jury with regard to deliberate indifference and duty. To win a new trial, Egebergh must show that: (1) the instructions did not adequately state Seventh Circuit law; and (2) the error was prejudicial because the jury was likely confused or misled. *Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 452 (7th Cir. 2001). Even if the jury instructions were erroneous, Egebergh cannot win a new trial if the

applicable principles of law were communicated to the jury. *Id.* Egebergh cannot satisfy the two-prong test articulated above for either instruction.

We instructed the jury as to deliberate indifference as follows:

> Deliberate indifference, as used in a medical case, means: Intentionally ignoring plaintiff's serious medical needs. Deliberate indifference is established only if there is actual knowledge of a substantial risk that plaintiff has a serious medical need and if the defendant consciously refuses to take steps to deal with the need. Mere negligence or inadvertence does not constitute deliberate indifference.
>
> The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference. A defendant's failure to alleviate a significant risk that he should have perceived but did not does not constitute deliberate indifference.

Plaintiff argues that the last paragraph "is confusing and not patterned." We note first that there is no requirement that jury instructions be patterned. *See United States v. Smith,* 131 F.3d 685, 688 (7th Cir. 1997) ("composition of jury instructions is not an exact science [and] many formulations may be adequate") (internal citation omitted). The instructions, viewed in their entirety, must be correct statements of the law. *Id.* That is exactly the case here. The language used in the deliberate indifference jury instruction was articulated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825 (1970), and has been repeated in numerous Seventh Circuit cases discussing deliberate indifference. *See, e.g., Higgins v. Correctional Med. Servs. Inc.,* 178 F.3d 508, 511 (7th Cir. 1999) (citing *Farmer*); *Snipes v. DeTella,* 95 F.3d 586, 590 (7th Cir. 1996) (citing *Farmer*). The jury instruction language is an accurate expression of the law, and Egebergh cannot show she was prejudiced by it.

As to duty, we instructed the jury as follows:

> The duty to provide medical care to Edward Fitzgibbons is severed when Mount Prospect relinquishes control of him and there is no further

> constitutional requirement to attend to his medical needs when he is no longer in the custody of defendants.
>
> You are further instructed that a defendant is not responsible and cannot be held liable for the conduct of another, including an agency to whom custody was transferred.
>
> In determining whether defendants violated Edward Fitzgibbons's constitutional rights, you may consider what defendants knew about Edward Fitzgibbons's condition at the time they relinquished custody and to what extent they communicated that condition to Cook County.

Egebergh objects to this instruction, saying it is duplicative of the proximate cause instruction and confusing.

First, it is a correct statement of the law. Defendants Nicholson and Burdi had a duty to provide for Fitzgibbons's needs only while Fitzgibbons was in their custody; their duty ceased once he was released. *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 198-200 (1989); *Collignon v. Milwaukee County*, 163 F.3d 982, 991 (7th Cir. 1998). In addition, Nicholson and Burdi cannot be responsible for the actions taken by a different governmental agency. *See Patton v. Przybylski*, 822 F.2d 697, 700-01 (7th Cir. 1987) (state police officer had no authority over city police department or county jail authorities). Moreover, section 1983 liability requires direct involvement in the constitutional deprivation; liability cannot be imposed vicariously. *See Payne for Hicks v. Churchich*, 161 F.3d 1030, 1042 n.15 (7th Cir. 1998). The jury instructions state clearly the applicable law. Egebergh does not say how the instructions were confusing.

Second, duty and proximate cause are distinct issues in section 1983 cases, *see Boyce v. Moore*, 314 F.3d 884, 888-89 (7th Cir. 2002) (discussing duty of states to provide adequate medical care to incarcerated individuals); *Hibma v. Odegaard*, 769 F.2d 1147, 1155 (7th Cir. 1985) (principles of tort liability govern section 1983 liability, including issue of causation), and

appropriately, instructions on each area of law were given to the jury. In sum, the jury instructions accurately reflected the law, and we cannot say that as a whole, the instructions misled the jury. *See United States v. Doerr*, 886 F.2d 944, 960 (7th Cir. 1989) (discussing review of jury instructions).

## Conclusion

For the reasons stated herein, Egebergh's Rule 59(a) motion for a new trial is denied.

**ENTER:**

**UNITED STATES SENIOR DISTRICT JUDGE**
**PAUL E. PLUNKETT**

DATED: **APR 1 9 2004**